# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | |
|---|---|
| **RONALD J. MACK,** ) | |
| ) | |
| Plaintiff, ) | Case No. 7:19CV00536 |
| ) | |
| v. ) | **OPINION** |
| ) | |
| **L. A. MULLINS, ET AL.,** ) | By: James P. Jones |
| ) | United States District Judge |
| Defendants. ) | |

*Ronald J. Mack, Pro Se Plaintiff; Ann-Marie White, Office of the Attorney General, Richmond, Virginia, for Defendants.*

The plaintiff, Ronald J. Mack, a Virginia inmate proceeding pro se, filed a complaint under 42 U.S.C. § 1983, alleging violations of his rights related to prison disciplinary proceedings. After review of the record, I conclude that the defendants' Motion to Dismiss must be granted.

## I. BACKGROUND.

Mack is an inmate in the custody of the Virginia Department of Corrections ("VDOC").[1] At the time these claims arose, he was incarcerated at Red Onion State Prison ("Red Onion"). On February 1, 2019, Mack and his cell mate, inmate Azzez,

---

[1] This summary of the evidence is taken from the verified Complaint and supporting documentation. The defendants are L. A. Mullins, Institutional Hearings Officer; Sergeant J. S. Lovell; Warden Jeffery Kiser; and Marcus Elam, VDOC Regional Administrator.

were charged with offense code 102, possession or use of a weapon.[2] The Disciplinary Offense Report ("DOR") stated that Officers Sellars and Bentley conducted a random search in the A-2 pod on February 1, 2019, and reported their findings to Sgt. Lovell, who was listed as the reporting officer on the DOR. The DOR stated:

> As the officers were searching cell A-205, Officer Sellars found four homemade weapons in a book on the shelf. I Sergeant Lovell was called via radio to respond to the A-2 pod. Upon arriving to cell A-205 Officer Sellars showed I Sergeant Lovell four homemade weapons which appeared to made out the internals of several jp5 players. [Mack] was asked if the weapons was his but he refused to respond. Neither offender claimed responsibility for the weapons.

Pet. Ex. A, at 1, ECF No. 1-1. Both inmates were separately charged with offense code 102, possession or use of a weapon. Mack signed to acknowledge that he was served with the DOR later that same day.

In preparation for the disciplinary hearing, Mack requested a witness statement from Azeez, who wrote: "All of the knives found in the cell belonged to me. R. Mack had nothing to do with it." Pet. Ex. D, at 4, ECF No. 1-1. Mack also

---

[2] VDOC Operating Procedure ("OP") 861.1(VIII)(A) provides that an offender may be charged for a possession infraction, such as an offense code 102, when the item he is charged with possessing is "found on their person or physically within their control or is found in an area to which they can reasonably control the access of other offenders." Pet. Ex. F, at 6, ECF No. 1-1. This OP provision also states that "[e]ach offender assigned to a double cell is individually responsible for anything found on their person or in their locker, whether locked or unlocked. . . . and both may be charged for contraband found in the common areas of the cell, unless one offender claims responsibility for the contraband or there is additional reliable evidence linking the offender to the item." *Id*.

submitted a request for documentary evidence, asking for "Written information that's relevant to the Disciplinary Report," in the possession of the building supervisor. Pet. Ex. E, at 5, ECF No. 1-1. He stated his belief that such documentation would "show that [he] was not in constructive possession of any weapons and c[ould] possibly exclude as well as distance [him] from as much." *Id.* This request was denied as not relevant. At some point in early February, Azeez pleaded guilty to possession of the weapons found in cell A-205.

On February 15, 2019, Mullins conducted a disciplinary hearing on Mack's 102 charge and found him guilty. In the statement of reasons for this finding, Mullins stated:

> Sgt. Lovell testified that he was called by C/O Sellars who had found weapons in a book on the shelf in the cell of offender [Mack]. Both Mack and [Azeez] were pulled aside and asked about the weapon but neither one claimed them. R. Mack denied that the weapon was his saying that [Azeez] claimed it later on. Sgt. Lovell had already testified that as he was escorting [Azeez] to RHU he told him that he [Azeez] did not know anything about the weapons. Offender Azeez gave conflicting statements of ownership as he later sent a witness statement for Mack saying that he (Azeez) was the owner of the weapons. The weapons were found in a common area and both offenders in the cell were equally responsible unless one claimed responsibility. Both offenders were charged and offender Azeez gave conflicting statements. I am finding R. Mack guilty of possession of a weapon since no offender has convincingly claimed responsibility for the weapons found in a common area of the cell.

Pet. Ex. C, at 3, ECF No. 1-1.  Mullins penalized Mack with a $15 fine.  On appeal Warden Kiser and Regional Administrator Elam upheld Mullins' findings and penalty.

Mack's § 1983 Complaint alleges that the following actions violated his due process rights: (1) Mullins (a) found Mack guilty based on insufficient evidence; (b) called Lovell as the reporting officer although Lovell was not present when the weapons were found; (c) allowed Lovell to testify about facts that he had not stated in the DOR; (d) failed to call Azeez and Sellars as witnesses for the hearing; (e) denied Mack's request for the documentary evidence; and (f) made decisions that demonstrated a lack of impartiality as hearing officer; (2) Lovell acted as reporting officer, while also claiming that he did not know many facts when Mack questioned him; (3) on appeal, Warden Kiser failed to correct the procedural errors that Mack highlighted; and (4) on appeal, Elam upheld the guilty finding, despite due process errors that Mack demonstrated.  As relief, Mack seeks expungement of the disciplinary conviction and monetary damages.  Mack claims that as a result of being found guilty for an infraction of which he was innocent, he suffered anxiety and depression for which he sought mental health care, and he remained in segregated housing for many weeks.

## II.  DISCUSSION.

A district court should dismiss a complaint under Rule 12(b)(6) if, accepting all well-pleaded allegations in the complaint as true and drawing all reasonable factual inferences in the plaintiff's favor, the complaint does not allege "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  To state a claim under § 1983, a plaintiff must allege "the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."  *West v. Atkins*, 487 U.S. 42, 48 (1988).

The Due Process Clause of the Fourteenth Amendment provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law."  U.S. Const. amend XIV § 1.  Where a claimant asserts procedural due process claims, as Mack does, the court must first consider whether the inmate has asserted a protectable interest and, if so, whether he was afforded the minimum procedural protections required by the Fourteenth Amendment before he was deprived of that interest.  *Incumaa v. Stirling*, 791 F.3d 517, 526 (4th Cir. 2015).  When a penalty for a disciplinary infraction does not affect the length of an inmate's term of confinement, his constitutionally protected liberty interests are generally limited to freedom from restraint that imposes atypical and significant hardship on him in relation to the ordinary incidents of prison life.  *Sandin v. Conner*, 515 U.S.

472, 484 (1995) (holding that disciplinary segregation did not present the type of atypical, significant deprivation in which a state might create a liberty interest). Without a federally protected interest at stake, the inmate has no federal claim to particular procedural protections. *Prieto v. Clarke*, 780 F.3d 245, 248 (4th Cir. 2015).

Relying on *Sandin*, the defendants assert that Mack's due process claims fail, because the $15 fine Mullins imposed did not give rise to a constitutionally protected interest entitled to due process protections. Judges of this court have ruled that disciplinary fines are not atypical or significant hardship for a prisoner and do not trigger federal due process protections under *Sandin. See, e.g., Roscoe v. Mullins*, No. 7:18CV00132, 2019 WL 4280057, at *3 (W.D. Va. Sept. 10, 2019) (granting summary judgment in defendants' favor as to the due process claim where the only penalty imposed was a $15 penalty), *appeal docketed*, No. 19-7343 (4th Cir. Sept. 24, 2019).³ I need not decide this aspect of Mack's claim, however, because I find

---

³ Although the Fourth Circuit has not yet spoken directly on this issue, some courts have expressed doubt as to whether *Sandin*'s analysis — requiring that the imposed hardship be "atypical and significant" to create a constitutionally protected interest — applies in the context of *property* deprivations, given that *Sandin* addressed whether a particular deprivation implicated a *liberty* interest. *See Anderson v. Dillman*, 824 S.E.2d 481, 483–84 (Va. 2019) (noting the disagreement among federal courts on this issue and discussing the different rationales underlying the decisions); *Muhammad v. Virginia*, No. 7:14CV00529, 2016 WL 1068019, at *15 (Feb. 1, 2016) ("As to the charge of fighting with another person, the $12.00 fine against Muhammad implicates a property interest under the Due Process Clause, in spite of the Defendants' claim to the contrary."), *R. & R. adopted in part, rejected in part on other grounds*, 2016 WL 1071039 (W.D. Va. Mar. 17, 2016).

Clearly, Mullins had some evidence in the record to support the finding that Mack was guilty of constructive possession of the weapon, in violation of the offense code 102. The DOR stated, and the reporting officer testified, that the weapons were found on the shelf, an area for which both inmates could be held responsible, and that "[n]either offender claimed responsibility for the weapons." Pet. Ex. A, at 1, ECF No. 1-1. Lovell testified that Azeez claimed no knowledge of the weapons during escort to segregation. Mullins thus found Azeez's later admissions of guilt regarding the weapons to be inconsistent and, therefore, unreliable. In reviewing the sufficiency of the evidence, I cannot reweigh the record on which Mullins relied, and therefore, I will grant the Motion to Dismiss as to Mack's claim (1)(a), alleging insufficient evidence. A finding of sufficient evidence, however, is irrelevant to deciding whether Mack's other asserted due process claims have merit. *Lennear v. Wilson*, 937 F.3d 257, 277 (4th Cir. 2019).

Mack's next three claims against Mullins fault the way the hearing evidence was presented. Mack asserts that Mullins should not have called Lovell as a witness, should have refused any testimony about events not included in the DOR, and should have had Azeez and Sellars present for questioning. None of these alleged shortcomings, however, fall within the limited procedural protections outlined in

*Wolff*.[4] Moreover, Mullins did consider the witness statement Azeez provided for Mack. Mullins simply found it unreliable, because it was not consistent with other evidence about Azeez's failure to claim the weapons on the day they were found. Furthermore, if Mack wanted to ask Sellars or Azeez questions about where the weapons were found, Mack could have requested particularized witness statements from Sellars and Azeez on such issues.[5] The record does not indicate that Mullins denied Mack the opportunity to do so. I will grant the Motion to Dismiss as to Mack's claims (1)(b), (c), and (d).

In claim (1)(e), Mack asserts that Mullins wrongfully refused to obtain the documentary evidence he requested. In his request, however, Mack failed to identify any particular document that he had not already received about the disciplinary charge. It is well established that "[p]rison officials must have the necessary discretion to keep the hearing within reasonable limits" by refusing requests for witnesses or documents, "whether it be for irrelevance, lack of necessity, or the

---

[4] Mack's claims that Mullins' actions violated various VDOC procedural policies do not rise to the level of constitutional claims so as to be actionable under § 1983. *See United States v. Caceres*, 440 U.S. 741, 752–55 (1979); *see also Riccio v. Cty. of Fairfax*, 907 F.2d 1459, 1469 (4th Cir. 1990) (finding that if state law grants more procedural rights than Constitution requires, state official's failure to abide by that law is not a federal due process issue).

[5] For example, Mack contends that Mullins' decision to call only Lovell as a witness prevented Mack from presenting evidence Lovell claimed he did not know — that the weapons were found inside a book with Azeez's name written on it, on a shelf where none of Mack's property was stored. However, Mack could have asked Sellars or Azeez for a statement on these issues.

hazards presented in individual cases." *Wolff*, 418 U.S. at 566. Without knowing what documents Mack sought or what their particular content might show that Mack could not show from other sources, I cannot find that Mullins abused his discretion by denying the request as not relevant. I will grant the Motion to Dismiss as to claim (1)(e).

Mack also contends, in claim (1)(f), that Mullins' decisions during the hearing, taken in the aggregate, demonstrate his lack of impartiality and fairness as a hearings officer. The mere fact that Mack disagreed with Mullins' rulings on the evidence, however, cannot prove that Mullins had some pre-existing bias against Mack or outside knowledge of the offense conduct that prevented him from maintaining impartiality. On the contrary, Mullins' written statement of reasons and the other documents in the record indicate that he heard and considered Mack's evidence and witness statement but decided the weight of the evidence did not support a finding that Mack had no constructive possession of the weapons. I cannot find that Mack's allegations support an actionable claim that Mullins' decision making was so arbitrary and haphazard that it could be violative of due process. *See id.* at 571.

Mack sues Lovell for acting as a reporting officer when he was unable to testify, firsthand, to facts Mack wanted to present in his defense. I find no requirement under *Wolff* that was violated by Lovell's actions. Moreover, as stated,

Mack could have used other witnesses to present the desired defense evidence about the ownership of the book and property items stored on the cell shelf. Finding no actionable constitutional claim against Lovell, I will grant the Motion to Dismiss as to claim (2).

Finally, Mack claims that Kiser and Elam, the officials who reviewed his disciplinary appeals, failed to correct procedural errors. As I have already explained, however, I do not find that Mack's Complaint and submissions present any due process claims actionable under § 1983. Accordingly, I must also conclude that defendants Kiser and Elam did not violate his constitutional rights in failing to rule differently on his disciplinary appeals. I will grant the Motion to Dismiss as to claims (3) and (4).

### III. CONCLUSION.

For the reasons stated, I will grant the defendants' Motion to Dismiss. A separate Order will be entered herewith.

ENTER: July 24, 2020

/s/ JAMES P. JONES
United States District Judge